IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORIS H., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   25-cv-1337 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

MEMORANDUM OPINION

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE                                  October 7, 2025

Plaintiff Doris H. brought this action seeking review of the Commissioner of Social Security Administration's decision denying her claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 11) is **DENIED**.

I. PROCEDURAL HISTORY

This case is before me for the second time, after I remanded to the Administrative Law Judge (ALJ) based on errors related to her treatment of Plaintiff's post-traumatic stress disorder (PTSD) diagnosis and the medical opinion of her treating psychiatrist, Beatrice Desir, D.O.  *See Hammond v. O'Malley*, 735 F. Supp. 3d 567 (E.D. Pa. 2024).  Plaintiff initially protectively filed for SSDI and SSI on February 10, 2020, alleging disability since January 14, 2020, due to mental illness, headaches, high blood pressure, fatigue, and numbness in her hands and feet.  (R. 128-29,

310, 322). Plaintiff's applications were denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an ALJ. (R. 86-171, 215-16). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the October 14, 2021, administrative hearing. (R. 40-69). On November 23, 2021, the ALJ issued a decision unfavorable to Plaintiff. (R. 21-39). Plaintiff appealed her decision, but the Appeals Council denied Plaintiff's request for review on March 27, 2023, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On May 26, 2023, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. *Hammond*, 735 F. Supp. 3d at 571. I granted Plaintiff's request for review based on a determination that the ALJ erred in her treatment of Plaintiff's PTSD diagnosis and of Dr. Desir's medical opinion and remanded the case to the ALJ for further proceedings. *Id.* at 585.

The ALJ held a second administrative hearing on October 10, 2024, at which Plaintiff, represented by counsel, and a VE testified. (R. 1060-79). During that hearing, Plaintiff amended her alleged onset date to January 23, 2019. (R. 1064). On November 27, 2024, the ALJ issued a decision unfavorable to Plaintiff. (R. 1036-59).

On March 12, 2025, Plaintiff filed another complaint in this Court and consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Compl., ECF No. 1; Consent Order, ECF No. 4). On July 28, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 11). The Commissioner filed a Response on August 26, 2025, and on September 9, 2025, Plaintiff filed a Reply. (Resp., ECF No. 12; Reply, ECF No. 13).

II.    **FACTUAL BACKGROUND**[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review. Given the posture of this case, its facts—including Plaintiff's history of mental health issues; the medical opinions of Dr. Desir, John David Gavazzi, Psy.D., and Peter J. Garito, Ph.D; and Plaintiff's psychiatric treatment history—remain largely the same as the prior administrative appeal. The Court therefore assumes the parties' familiarity with the factual record, hereby incorporates the factual background as laid out in its prior opinion, *Hammond*, 735 F. Supp. 3d at 572-75, and restates only what is necessary to resolve the issues raised in the present appeal.

A.    **Medical Evidence**

Plaintiff has been treated for psychiatric issues "on and off" since at least 2015. (R. 442). Dr. Desir, a psychiatrist with Merakey Delaware County, NHS Life Guidance Services (Merakey), in Sharon Hill, Pennsylvania treated Plaintiff for these issues since at least January 2019. (R. 512-667, 692-911, 1019-35). Throughout her treatment at Merakey, Plaintiff generally was cooperative, with appropriate affect, logical and goal-directed thought processes, good attention and concentration, intact memory and fair insight and judgment, (*see, e.g.,* R. 518-19, 525, 530, 535, 540, 545, 701-02), but also endorsed bizarre, paranoid, and delusional beliefs. (*See, e.g.*, R. 545, 550, 692, 695, 774, 778). Plaintiff has not consistently complied with her medication regimen throughout the duration of her treatment, even though she has stated on multiple occasions that her prescribed medications help to control her mental health symptoms. (*See, e.g.*, R. 512, 518, 524, 539, 563, 576 (noting that she had anxiety and worry with racing

---

[1] Because Plaintiff's request for review implicates only her mental impairments, the Court does not summarize the evidence relating to any physical impairments.

thoughts but adding that she was "stable on psych meds"); R. 637 (telling her therapist that her mood had been stable while taking her medications consistently)).

On August 26, 2021, Dr. Desir opined that Plaintiff had satisfactory or better functionality in all work-related mental abilities except two, in which she was "seriously limited": "work[ing] in coordination with or proximity to others without being unduly distracted" and "deal[ing] with normal work stress." (R. 1034). She also noted that on average Plaintiff would miss work one day per month due to her impairments. (R. 1035). She explained:

> [Plaintiff] has worked in the past but working in a stressful environment le[d] to her decompensating quickly. When stressed she tends to neglect her self care (eating, sleeping, taking medications regularly) and this leads to the exacerbation of her symptoms. [Plaintiff] has been stable on her medication regimen and is doing well. [Plaintiff] would do best in a low stress work envi[r]onment[.]

(*Id.*).

On January 19, 2021, State agency psychological consultant John David Gavazzi, Psy.D., opined that Plaintiff had mild limitations in understanding, remembering or applying information and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 97). Upon reconsideration, on May 20, 2021, State agency psychological consultant Peter J. Garito, Ph.D., reached the same conclusions. (R. 139). Both also assessed her with "severe" "trauma- and stressor-related disorders" and further noted her bizarre beliefs and delusions, although Dr. Garito added that they do not affect her functioning. (R. 118, 140).

On July 3, 2024, psychiatrist Joseph Hart, M.D. of Merakey completed a comprehensive psychiatric evaluation report in which he found that Plaintiff had done a "fair to good" job complying with her medication regimen during the past 5 years and that her illness had been

"better controlled." (R. 1629). During that examination, Plaintiff reported that her last "breakdown" due to her bipolar mania disorder occurred five years prior. (*Id.*). She also stated that she noticed she experienced increased mania, anxiety, and hallucinations when she failed to take her medication. (*Id.*). At that same examination, Dr. Hart noted that Plaintiff's bipolar disorder was currently "well-controlled, with no recent manic or depressive episodes." (R. 1634).

### B. Non-Medical Evidence

Plaintiff testified at the October 14, 2021, administrative hearing. (R. 40-69). She described the extent of her mental health issues—including her bizarre delusional thoughts and theories[2]—as well as how these issues affected her relationships with other people. (R. 58-63). A VE also testified at this hearing, stating: (1) zero absences would be tolerated by employers during an initial 60-to-90-day probationary period; and (2) if an individual were off task up to 20% of the day due to being in proximity to coworkers, work would be precluded and "their occupational base would be eroded to zero." (R. 66-67).

At the October 24, 2024, administrative hearing, Plaintiff reaffirmed the contents of her testimony from the prior administrative hearing. (R. 1065, 1070). She noted that: she was still receiving mental health treatment, though she no longer treated with Dr. Desir; she saw a therapist weekly; and she had not been hospitalized since the last administrative hearing. (R. 1066). She also testified that she believed the medications prescribed to her for her mental health issues helped her. (R. 1067). Specifically, she believed they helped: to control her

---

[2] These bizarre thoughts and delusions included her beliefs that: "The Free Masons and the Illuminati run the media and world"; "The politician superstars, sports athletes among others are responsible for missing children"; other people can time travel; all people have a third eye that allows them to "see things differently"; and the government is "listening" to her. (R. 58-61).

anxiety; to keep her mind from racing; and with her sleep. (R. 1067-68). Notwithstanding the beneficial effects of her medication regimen, Plaintiff admitted that she had stopped taking her medications because she thought she was "cured in [her] mind." (R. 1068). She went on to state that she is "okay," but only when she is taking her medication. (*Id.*). She thus considered it "worth taking," even though she did not think she could work while taking it because it makes her "sleepy." (*Id.*).

Plaintiff noted her activities of daily living (ADLs) included: cleaning; doing household chores; walking her dog; reading; occasionally preparing meals; and running certain errands. (R. 1068-69). She also testified that she sometimes cared for her youngest grandson. (R. 1075).

Regarding her mental health symptoms, Plaintiff testified that she believed that different dimensions and time travel existed, and that "the government [is] trying to control [people] through food." (R. 1072, 1074). She described having a peculiar feeling that strangers "act as if they know [her]" whenever she left the house, which made her feel uncomfortable. (R. 1070-71). Due to this feeling, she rarely left the house, and when she did, her daughter usually tried to accompany her. (R. 1071). According to Plaintiff, "it gets weird when [she goes] out into the world when it comes to people." (R. 1072). Notwithstanding these feelings, Plaintiff testified that she did not feel depressed or suicidal. (*Id.*).

Plaintiff then testified that even when she took her prescribed medication, she still experienced these strange thoughts. (R. 1071). The medication simply functioned to temper them. (*Id.*). Plaintiff opined that when taking her medication she was "a 2 or 3" (with 10 being the worst), but without her medication she is "over a 10." (*Id.*). She explained that when she failed to take her medication, "[e]verything [was] so much worse—people, family, [] the inside of [her] mind." (R. 1071-72). During these times, she experienced racing thoughts and

6

confusion. (R. 1072).

A VE also testified at the administrative hearing, stating that if an individual were off task up to 20% of the workday because of inability to deal with basic work stress, she would be precluded from all jobs. (R. 1078-79).

## III.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work. If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work

experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *See, e.g.*, *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *See, e.g.*, *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The Court exercises plenary review over legal issues. *See, e.g.*, *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.   ALJ'S DECISION

The ALJ issued a decision in which she made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since January 14, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: uterine adenomyosis and fibroids; iron deficiency anemia; obesity; bipolar I disorder, with psychotic features; depression; and post traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,

      404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to performing simple and repetitive tasks with only occasional changes in the work setting, and can have only have occasional contact with the public and coworkers.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 30, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 1041-50).  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. 1050).

## V.    DISCUSSION

    Plaintiff presents three claims in her request for review, including that the ALJ erred by failing to: (1) consider the correct alleged onset date, and by extension the full ambit of relevant record evidence; (2) properly credit Dr. Desir's medical opinion; and (3) include all of Plaintiff's credibly established limitations in the RFC of the hypothetical she presented to the VE.  (Pl.'s Br, ECF. No. 11, at 5, 19).

### A.     The ALJ's Use of the Incorrect Onset Date

#### 1.     The Parties' Arguments

Plaintiff first argues that the ALJ made a "clear mistake of fact" by finding that the alleged onset date was January 14, 2020, instead of the amended date of January 23, 2019. (*Id.* at 5). This mistake led to her "disregard[ing] material evidence" from the period between the two dates. (Reply, ECF No. 13, at 1-2). Regarding what evidence the ALJ supposedly failed to consider, Plaintiff argues:

> For example, on March 6, 2019, [Plaintiff] had increased anxiety, fear of contaminated seat cushions, and continued adherence to a belief that all people are "from the future." On May 1, 2019, she and her therapist discussed "how increased stress also elevates her persecutory/paranoid beliefs." On June 5, 2019, Plaintiff noted an increase in "how frequently and intensely she experiences the negative intrusive thoughts that center on government conspiracy theories." None of the evidence was mentioned or considered by the ALJ in her decision, despite the fact that this Court specifically cited this evidence in its opinion reversing and remanding the 2021 ALJ decision.

(*Id.* at 2 (citations omitted)).

The Commissioner responds by noting that the ALJ in fact analyzed record evidence from January 2019 onward. (Resp., ECF No. 12, at 3-4 (citing R. 1043, 1046)). For example, she expressly highlighted treatment notes which illustrated Plaintiff "was doing good" in January 2019, as well as examination findings from that time showing that, although she reported some delusional thoughts, she had an appropriate affect, intact and goal-directed thought processes, intact memory, and good attention. (*Id.* at 4 (citing R. 1046)). Therefore, the ALJ's inadvertent mistake in using the wrong onset date is harmless, according to the Commissioner, because her consideration of the evidence would have been no different even had she used the correct date. (*Id.* at 3-4 (citing *Miller v. Colvin*, No. 3:12-CV-01813, 2014 WL 2047903, at *6-7 (M.D. Pa.

10

May 19, 2014))).

### 2. Analysis

I agree with the Commissioner that the ALJ's use of the wrong onset date was harmless error given that her decision demonstrates she in fact considered all the relevant evidence. So long as "the ALJ's conclusions would be no different [even if s]he had used the correct alleged onset date, . . . remand is not warranted." *Miller*, No. 3:12-CV-01813, 2014 WL 2047903, at *7. Here, the ALJ cited to record evidence from January 2019 through January 2020, (*see* R. 1043, 1046 (citing R. 512-13, 524-25, 530, 540)), indicating that the ALJ considered evidence from the period at issue. Plaintiff argues that notwithstanding this, there were still certain pieces of record evidence that the ALJ did not expressly consider, including treatment notes from March 6, 2019, (R. 576), May 1, 2019, (R. 588), and June 5, 2019, (R. 596), wherein Plaintiff reported she had increased anxiety and fear, endorsed delusional thoughts including that people "are from the future," discussed her increased stress, and described an increase in experiencing "negative intrusive thoughts that center on government conspiracy theories." (Reply, ECF No. 13, at 2). However, the ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953); *see also Hur v. Barnhart*, 94 F. App'x. 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record."). In Plaintiff's case, the ALJ simply viewed that information differently than Plaintiff would have liked. Therefore, Plaintiff's contention that the ALJ "failed to adjudicate a full year of the period of disability alleged by Plaintiff" is belied by the ALJ's opinion.

### B. The ALJ's Treatment of Dr. Desir's Opinion

#### 1. The Parties' Positions

Plaintiff next argues that the ALJ erred in rejecting portions of Dr. Desir's medical opinion. In finding Dr. Desir's opinion only partially persuasive, the ALJ relied upon "examination findings including neutral mood, fair attention and concentration, and normal thought content" as well as the fact that Plaintiff and other medical sources reported on multiple occasions that she was doing "okay" with treatment. (R. 1048 (citing R. 529, 571, 590, 607, 621, 634, 1019-20, 1024, 1029)). The ALJ ultimately found that "the opinion that [Plaintiff] would be absent from work at least one day per month is speculative and is not supported by any explanation." (*Id.*). Plaintiff contends that this explanation did not satisfy the regulatory requirements given that Dr. Desir's opinion was consistent with other medical and non-medical evidence in the record (including Plaintiff's well-documented delusional and paranoid beliefs), and the ALJ failed to consider or credit this consistency. (*See* Pl.'s Br., ECF No. 11, at 17 (positing that the regulations require the ALJ "to *explain* why an opinion is consistent or not consistent, not simply summarize the other evidence in the record and let the reader decide whether the opinion is consistent with it") (emphasis in original) (quoting *Gongon v. Kijakazi*, 676 F.Supp.3d 383, 400 (E.D. Pa. 2023))). According to Plaintiff, because the ALJ "failed to 'make any mention of the reasons given by Dr. Desir for her opinion'"—namely the record evidence concerning Plaintiff's delusional and paranoid thought processes—her analysis of the opinion did not satisfy the Act's requirements under 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1) and, further, did not ultimately "correct any of the errors pointed out in this Court's prior opinion." (Reply, ECF No. 13, at 3). Plaintiff also argues that the ALJ should have afforded Dr. Desir's opinion more weight given her longitudinal relationship with Plaintiff,

as a treating provider, per 20 C.F.R. § 404.1520c(c)(3)-(4).  (*Id.* at 17-18).

The Commissioner responds that the ALJ's assessment of Dr. Desir's opinion and the larger medical record complied with applicable regulations, which require only that the ALJ explain how she considered the opinion's supportability and consistency.  (*Id.* at 4-5).  Therefore, the fact that the ALJ did not articulate how she considered Dr. Desir's longitudinal treating relationship with Plaintiff was not error.  (*Id.*).  As for the supportability and consistency of Dr. Desir's opinion, the Commissioner points to the ALJ's reliance upon (1) the fact that Plaintiff had generally unremarkable mental status evaluations by Dr. Desir, as well as (2) the myriad reports throughout the record that Plaintiff functioned much better when she complied with her medication regimen.  (*Id.* 5-7).  To the extent that Plaintiff disagrees with the ALJ's reliance on the mental status examinations and how she resolved record evidence relating to Plaintiff's delusional thoughts and conspiracy theories, the Commissioner argues that that disagreement (and accompanying argument) simply amounts to a request for this Court to impermissibly re-weigh the evidence.  (*Id.* at 6 (citing *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014))).

   2.   Analysis

I agree with the Commissioner that the ALJ did not err in her treatment of Dr. Desir's opinion, or of the broader medical record as a whole.  "The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four."  *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121).  "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others."  *Id.* (citing 20 C.F.R. § 404.1545(a)).  "Moreover, the ALJ's finding of residual functional capacity must 'be accompanied by a clear

13

and satisfactory explication of the basis on which it rests.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981)). In *Cotter*, the Third Circuit explained:

> In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

642 F.2d at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir.1974)).

Further, "[a]n ALJ must explain the weight given to physician opinions . . . ." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. § 404.1527(f)(2)(ii); *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005)). When articulating her findings about whether an opinion is persuasive, the ALJ need only explain how she considered "the most important factors" of supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An "ALJ 'cannot reject evidence for no reason or the wrong reason.'" *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Cotter*, 642 F.2d at 707).

Here, in rejecting the more restrictive portions of Dr. Desir's opinion, the ALJ complied with these requirements, relying upon: (1) relatively unremarkable mental status examinations contained in the record; and (2) the myriad notes in the record from both medical sources (including Dr. Desir herself) and Plaintiff indicating that she functioned much better when she complied with her medication regimen. (R. 1046, 1048). In reviewing the evidence related to Plaintiff's mental health issues generally, the ALJ explained at length:

> On exam, [Plaintiff] was fully oriented, had an appropriate affect, neutral mood, intact and goal-directed thought processes, delusions with some paranoia, intact memory, fair insight and judgment, and good attention. While [Plaintiff] did experience delusions, the remainder of her mental status exam was normal. In July 2019,

14

[Plaintiff] stated that she had been busy with chores around her house and getting her daughter ready to leave for college. She stated that her appetite and sleep were good. On exam, [Plaintiff] was alert, fully oriented, had normal thought content, logical and goal-directed thought processes, good attention, intact memory, and fair insight and judgment. In November 2019, [Plaintiff] reported that her medications helped her mood and she denied depression, mania, or hypomania. [Plaintiff] had a neutral mood, appropriate affect, normal thought content, fair insight and judgment, intact thought processes, and fair concentration. Treatment records consistently documented that [Plaintiff] was cooperative with appropriate affect.

\*\*\*

In April 2021, [Plaintiff] stated that she was doing okay, had good sleep and appetite with no suicidal or homicidal ideations. [Plaintiff] reported that she always had conspiracy theories but felt better on her medication. On exam, [Plaintiff] had an appropriate affect, neutral mood, intact thought processes, normal though[t] content, fair insight and judgment, and fair attention. In July 2021, [Plaintiff] was documented to be at her baseline mentally and that she felt well on her medications.

\*\*\*

Subsequent records document ongoing treatment for her mental impairments. In October 2022, [Plaintiff] complained of racing thoughts, poor concentration, mood swings, and delusions, but she reported that she had been without her prescription of Seroquel. In January 2023, [Plaintiff] reported she was doing much better with her new medication dosages and it was noted that she had no symptoms of depression, anxiety, nor hypomania. She reported no medication side effects. In April 2023, [Plaintiff] reported she was "doing really good" with her current medication regimen, including Effexor and Quetiapine. Examination notes at this visit noted [Plaintiff] had good attention and judgement, fair concentration and insight, and intact thought processes. There were no reports of any delusions nor hallucinations at this visit.

\*\*\*

An evaluation report in July 2024, noted [Plaintiff] had fair to good medication compliance and insight for the past 5 years and that her illness had been better controlled. [Plaintiff] reported that "when I go off my medications . . . I see the difference, get a little manic

> and anxious," and has hallucinations. She explained that she had times when she tried going off her medications and felt herself getting more symptomatic and then restarted her medications. Notably, her doctor reported [Plaintiff] overall had good compliance in recent years. In October 2024, it was noted that the claimant experienced mild psychotic symptoms such as paranoia and belief in conspiracy theories and feeling watched and spied upon. However, records stated at this visit that [Plaintiff's] bipolar disorder type 1 was currently well controlled, with no recent manic or depressive episodes, and that her most recent identified episode was mania five years before. Overall, the medical evidence demonstrates [Plaintiff's] mental impairments have been relatively well controlled with compliance with her psychotropic medications.

(R. 1046-47 (record citations omitted)).

Subsequently, the ALJ applied this same analysis to Dr. Desir's opinion specifically:

> The undersigned finds this opinion is partially persuasive to the extent that it is consistent with the above residual functional capacity because it is supported by her examination findings including neutral mood, fair attention and concentration, and normal thought content. Dr. Desir noted on several occasions that [Plaintiff] reported she was doing "okay" with compliance with her medications. It is also consistent with other records from Merakey that noted [Plaintiff] reported she was doing okay with treatment. However, the opinion that [Plaintiff] would be absent from work at least one day per month is speculative and is not supported by any explanation.

(R. 1048 (record citations omitted)).

Therefore, the ALJ addressed both the supportability and consistency of Dr. Desir's opinion. She noted that Dr. Desir did not support the more restrictive portions of the opinion given that she acknowledged Plaintiff had unremarkable mental status findings and that she was doing "okay" complying with her prescribed treatment. (*Id.*). Regarding consistency, the ALJ similarly observed that other medical evidence in the record also demonstrated that Plaintiff was "doing okay with treatment." (*Id.*). Though Plaintiff may disagree with this analysis, nothing therein was error as the ALJ fully explained her reasoning in concluding that Plaintiff's mental

16

illness symptoms (including her symptoms of depression, anxiety, mania, and hypomania) were adequately controlled by her medication regimen.  (*See* R. 1043, 1046-48).

Insofar as Plaintiff argues that the ALJ failed to specifically address the evidence relating to Plaintiff's delusions and hallucinations that this Court highlighted in its prior opinion remanding the matter, (Pl.'s Br., ECF No. 11, at 13-14), this contention both misses the mark and is belied by the ALJ's opinion.  First, as noted above, the ALJ is not required to address each piece of evidence individually.[3]  *See Bailey*, 413 F. App'x at 855 (quoting 20 C.F.R. § 404.953); *Hur*, 94 F. App'x at 133.  Second, the ALJ specifically determined that although Plaintiff experienced delusional thoughts and hallucinations, the record evidence demonstrated these symptoms could be controlled through medication.  This conclusion, supported by substantial evidence, is permissible.  *See Burnett*, 220 F.3d at 118 (substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate"); *Simmonds*, 807 F.2d at 58 (even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it).

---

[3] To the extent that Plaintiff raises this Court's earlier opinion remanding this case with instructions for the ALJ to address certain evidence related to Plaintiff's "delusions and paranoid thoughts," *see Hammond* 735 F. Supp. 3d at 583-84, that opinion did not call for the ALJ to address every single piece of evidence relating to Plaintiff's delusional thought processes.  Such a conclusion would of course violate clearly established law.  *See Hur*, 94 F. App'x at 133.  Instead, the opinion merely found that the ALJ had failed to grapple with *any* of the evidence relating to Plaintiff's delusional and paranoid thoughts, and thus remanded for the ALJ to consider that evidence and make appropriate factual findings as to how these symptoms might affect Plaintiff's RFC.  *See Hammond* 735 F. Supp. 3d at 583-84 ("The ALJ's supportability analysis also fails to make any mention of the reasons given by Dr. Desir for her opinion, despite the fact that under the regulations the ALJ must address the 'supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . .'") (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  On remand, the ALJ was permitted to weigh that evidence against the evidence illustrating that these symptoms can be controlled by an appropriate medication regimen, and conclude as much.  Ultimately, all that was required is that the ALJ explain how she considered this evidence.  *See Mason*, 994 F.2d at 1067.

Lastly, insofar as Plaintiff contends that the ALJ was required to explain the significance of Dr. Desir's longitudinal, treating relationship with Plaintiff, the regulations do not require this. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (An ALJ "may, but [is] not required to, explain how [she] considered the [medical source's relationship with the claimant], as appropriate"); *cf. Chandler*, 667 F.3d at 361 ("Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, . . . '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'") (citing 20 C.F.R. § 404.1527(d)(1)-(2); quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); *Adrienne L. v. O'Malley*, No. 1:21-cv-20492, 2024 WL 208963, at *7 (D.N.J. Jan. 19, 2024) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted).

Therefore, the ALJ did not err in partially rejecting Dr. Desir's opinion.

## C.  The ALJ's Omission of Certain Limitations

### 1.  The Parties' Positions

Finally, Plaintiff argues briefly that because the record evidence supported Dr. Desir's opinion in full, the ALJ impermissibly "omitted the limitations credibly established by [that] opinion"—namely that Plaintiff was limited in her ability to interact with other people and handle work stress, and that she would miss one workday per month based on her mental impairments. (Pl.'s Br., ECF No. 11, at 19 (citing *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002))). Ultimately, Plaintiff maintains that based on the VE testimony from both administrative hearings, had Dr. Desir's opinion been credited the ALJ would have been compelled to find Plaintiff disabled. (*Id.* at 8).

The Commissioner responds that because substantial evidence supported the ALJ's

treatment and analysis of Dr. Desir's opinion, the ALJ was not required to incorporate the more restrictive limitations contained in that opinion, as she reasonably rejected them. (*Id.* at 6-7 (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (stating that a hypothetical question posed to a vocational expert must accurately portray a claimant's physical and mental impairments, but it need reflect only those impairments that are supported by the record))).

### 2. Analysis

I agree with the Commissioner that Plaintiff's third claim fails, as it is predicated entirely upon the success of her second claim. In crafting a claimant's RFC, the ALJ must include all credibly established impairments and limitations. *Rutherford*, 399 F.3d at 553-54. The ALJ may not ignore "[l]imitations that are medically supported and otherwise uncontroverted in the record." *Id.* at 554 (citing *Burns*, 312 F.3d at 123). However, "limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" *Id.* (quoting *Mason*, 994 F.2d at 1066). An ALJ must consider the medical opinions together with the rest of the relevant evidence and explain the weight given to those opinions in his decision. *Chandler*, 667 F.3d at 362. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See, e.g.*, *Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, at *9 (E.D. Pa. Oct. 30, 2024); *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). The social security regulations "require, an ALJ to offer 'a narrative discussion describing how the evidence supports'" the limitations imposed. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (citing SSR 96-8P, 1996 WL 374184, at

\*7 (July 2, 1996)). Though "[t]he ALJ need only include in the RFC those limitations which he finds to be credible," *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007), the ALJ must explain why he found certain limitations unwarranted, and further "must build 'a logical bridge between the evidence and the result,'" *Nolasco v. Kijakazi*, No. 21-cv-4119, 2023 WL 2773532, at \*12 (E.D. Pa. Apr. 3, 2023) (quoting *Haut v. Colvin*, No. 15-511, 2016 WL 3962020, at \*11 (W.D. Pa. July 19, 2016)), in order to withstand scrutiny.

Here, for all of the reasons outlined above, *supra* § III(B)(2), the ALJ adequately explained her decision to partially reject the opinion of Dr. Desir, including the more restrictive limitations she assessed. The ALJ was not required to accept these limitations; instead, she was simply required to state whether she found them credible and explain her rationale supporting that conclusion. *See Hess*, 931 F.3d at 209; *Nolasco*, No. 21-cv-4119, 2023 WL 2773532, at \*12. Because the ALJ's determination finding Dr. Desir's opinion only partially persuasive was both supported by substantial evidence and adequately explained, her subsequent decision to reject Dr. Desir's more restrictive limitations was not error.

Accordingly, the Court denies Plaintiff's final claim as well.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's Request for Review is **DENIED**. An appropriate Order follows.

BY THE COURT:

　/s/ Lynne A. Sitarski　　　
LYNNE A. SITARSKI
United States Magistrate Judge